**John BIZUP, Jr., Petitioner,**

v.

**Harry C. TINSLEY, Warden of the Colorado State Penitentiary, Respondent.**

**Civ. A. No. 7771.**

United States District Court
D. Colorado.

Dec. 6, 1962.

Roland E. Camfield, Jr., Denver, Colo., for petitioner.

Duke W. Dunbar, Atty. Gen., for State of Colorado, John E. Bush, Asst. Atty. Gen., Denver, Colo., for respondent.

DOYLE, Judge.

The petition herein seeks the issuance of a writ of habeas corpus pursuant to Title 28 U.S.C. § 2241(c) (3). It alleges that following conviction and death sentence for felony-murder the petitioner's motion for new trial was denied on December 9, 1960; that thereafter, on May 28, 1962, the judgment of the District Court was affirmed by the Supreme Court of Colorado; that a petition for writ of certiorari was filed in the Supreme Court of the United States within the time required and that this petition was denied 1962, 83 S.Ct. 144. It further appears that the petitioner was tried in the District Court of Pueblo County on an information which charged murder but which did not specify felony-murder; that petitioner tendered an instruction which would have authorized the jury to render a verdict of second-degree murder but that the trial court refused to give it. The failure of the trial court to instruct the jury that if it found the evidence to establish premeditated malice to be lacking, the verdict of the jury would have to be murder in the second degree is said to be not only erroneous but also in violation of petitioner's rights guaranteed by the Fourteenth Amendment, Constitution of the United States, in that the Fourteenth Amendment guarantees a jury trial and contemplates that the jury shall have been correctly instructed.

The points advanced by appointed counsel are somewhat more comprehensive and at the same time more specific. They contend that the Fourteenth Amendment problem is one of both procedural and substantive due process; that petitioner's rights were infringed as a result of failure of the prosecution to charge felony-murder specifically and by reason of the Colorado definition of felony-murder, which definition excludes jury consideration of second-degree murder.

## I.

### JURISDICTION TO ENTERTAIN THE PETITION.

The first inquiry is whether the petitioner has exhausted his state remedies as required by Title 28 U.S.C. § 2254. This latter section provides that:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies

available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

Ordinarily, an applicant has exhausted state remedies after final determination by the State appellate court and following denial of writ of certiorari in the Supreme Court. See Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 and Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469. In this latter case the Supreme Court said that it is not necessary that a petitioner pursue a collateral remedy in the State court based on the same issues and evidence previously determined. However, it is not apparent that the exact issue now posed was decided by the Supreme Court of Colorado. See Bizup v. People, 371 P.2d 786, 788. The Colorado Supreme Court there determined that the failure of the trial court to instruct on second degree murder was not error. Petitioner argues that the circumstances in this case are such as to render collateral process in the Colorado courts ineffectual since habeas corpus in Colorado is available only where the lower court is shown to have lacked jurisdiction, or where the sentence imposed was in violation of the law; he argues that habeas corpus is not available in Colorado to review an erroneous conviction even though incident thereto the Fourteenth Amendment may have been violated. See Medberry v. Patterson, D.C., 174 F.Supp. 720; D.C., 188 F.Supp. 557; 10 Cir., 290 F.2d 275. Cf. Litchfield v. Tinsley (10 Cir.), 281 F.2d 486; Moore v. Tinsley, 142 Colo. 516, 351 P.2d 456.

In view of the foregoing, it is to be concluded that the petitioner has satisfied the exhaustion of remedies requirement of section 2254, supra, and the question remaining is whether "he is in custody in violation of the Constitution or laws or treaties of the United States." (Title 28 U.S.C. § 2241[c] [3]).

## II.

## THE QUESTION OF VALIDITY OF THE JUDGMENT.

The facts which bear upon the instant question are detailed in the opinion of the Supreme Court (371 P.2d 786, etc.) and in the transcript of the trial. From these it appears that on March 25, 1960, petitioner hailed a taxi and told the driver, Roy Don Bussey, that he wanted to go to the airport. While en route, petitioner fired a shot from his pistol through the floor of the cab and, after ordering Bussey to stop at the side of the road, demanded his money. Bussey then handed over a plastic pouch which contained money and his driver's license. He then, at the direction of the petitioner, drove until they came to a dirt road and followed this some distance, after which he turned around, stopped, and turned off the lights and ignition, all at the direction of the petitioner. Petitioner told Bussey that he would not be shot and following further conversation handed the driver's license back to him. Petitioner then started to get out of the cab and as he did so, he turned, pointed the pistol at the back of Bussey's head, and shot and killed him from this point-blank range. Petitioner then pulled the body out of the cab and left it at the side of the road. He then drove the cab back to Pueblo and abandoned it. Petitioner was apprehended two days later as he was attempting to hitchhike out of Pueblo.

Petitioner's contentions are: *first,* that the robbery and homicide were distinct transactions and that the robbery transaction had been completed and was fully terminated at the time that he pulled the trigger. This being so, the argument goes, it was essential that the jury, in order to find guilt of murder in the first degree to find that the homicide was accompanied by actual malice rather than the imputed malice which is the necessary ingredient of the felony-murder statute (C.R.S.1953, 40-2-3); and *secondly,* that the information herein failed to charge felony-murder and consequently deprived petitioner of his right to be

apprised of the particular crime for which he was charged. See Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240; De Jonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278; Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644.

a. *The Alleged Denial of Procedural Due Process.*

The information herein simply charged that on the date in question the petitioner "did feloniously, wilfully and of his premeditated malice aforethought, kill and murder one Roy Don Bussey."

The Colorado statute dealing with sufficiency of an information, C.R.S.1953, 39–4–4, provides:

"The information shall be sufficient if it can be understood therefrom:

"(1) That it is presented by the person authorized by law to prosecute the offense.

"(2) That the defendant is named therein, or described as a person whose name is unknown to the informant.

"(3) That the offense was committed within the jurisdiction of the court, or is triable therein.

"(4) That the offense charged is set forth with such degree of certainty that the court may pronounce judgment upon a conviction according to the right of the case."

And still another of the Colorado statutes (39–3–7) provides:

"* * * In any indictment for murder or manslaughter it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in every indictment for murder to charge that the defendant did feloniously, wilfully and of his malice aforethought kill and murder the deceased. It shall be sufficient in every indictment for manslaughter to charge that the defendant did feloniously kill and slay the deceased."

The defendant's argument going to the sufficiency of the charge necessarily brings into question the validity of the above statutes since the procedure followed here was in accord with the legislative policy expressed in the quoted provisions. He does not, however, mention them specifically.

In an early Colorado case, Jordan v. People, 19 Colo. 417, 36 P. 218, the validity of the last-quoted section was carefully considered. The Supreme Court of Colorado upheld it, saying:

"It is urged that the information in this case does not charge murder in the first degree. Our statute declares it 'shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in every indictment for murder to charge that the defendant did feloniously, willfully and of his malice aforethought kill and murder the deceased. * * *' Gen. St. § 926. Each count of the information contains all the averments required by the statute, and the additional charge that the killing was premeditated. The statute, taking its origin in England, has been adopted in a number of our states; and, so far as we are advised, wherever the question has been raised, the statute has been held constitutional, and indictments in the form provided held sufficient to charge murder of the first degree. 2 Bish. Cr.Proc. (2d Ed.) §§ 523–539, and cases cited. The act is not in conflict with the section of the bill of rights providing that 'in criminal prosecutions the accused shall have the right * * * to demand the nature and cause of the accusation.' Const. art. 2, § 16. An information must show the nature and cause of the accusation, i. e. it must set out the crime charged. It need not set out the mode or manner of its perpetration, or the instrument or agency employed to accomplish the result. Redus v. People, 10 Colo.

208, 14 Pac. 323; State v. Meyers, 99 Mo. 107, 12 S.W. 516; Goersen v. Com., 99 Pa.St. 388; Hill v. People, 1 Colo. 436. The indictment in the Redus Case was held sufficient to charge murder of the first degree without the word 'premeditated;' a fortiori, must the indictment in this case, charging the murder to have been premeditated, be held sufficient."

The instant information, although concise, contains every essential element demanded by the Colorado statutes and demanded also by generally approved principles of criminal pleading. See 40 C.J.S. Homicide §§ 141–161, pp. 1028–1060. It apprises the defendant of the nature of the charge, the date and place; it describes the victim and further alleges that the killing was with malice aforethought. It, however, fails to pinpoint the allegation that the homicide occurred incident to a known felony and whether due process requires this remains to be determined.

State v. Donato, 106 N.J.L. 397, 148 A. 776, 778 upheld an indictment which was in the language of the statute, saying:

"* * * Such an indictment is constitutional and legal (Graves v. State, 45 N.J.Law, 203, affirmed 45 N.J.Law, 347, 46 Am.Rep. 778; Titus v. State, 49 N.J.Law, 36, 7 A. 621; Brown v. State, 62 N.J.Law, 666, 42 A. 811), and will not be quashed upon an objection, as here, that it did not set forth the manner or the means by which the death of the deceased was caused."

A number of cases have upheld informations which are even more abbreviated than the Colorado form. State v. Capaci, 179 La. 462, 154 So. 419, held that an allegation of malice aforethought was unnecessary. In an earlier decision the Louisiana Court upheld as constitutional an indictment which simply charged that the defendant murdered the victim. See State v. White, 172 La. 1045, 136 So. 47. To the same effect are: Maxwell v. Commonwealth, 167 Va. 490,

187 S.E. 506; State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1 (a fully reasoned decision which points out that a questioning accused is free to request a bill of particulars); State v. Avery, 102 Utah 33, 125 P.2d 803 (upholding the short form of murder information); State v. Casey, 108 Ore. 386, 213 P. 771, 217 P. 632.

Recognizing fully the principle urged by petitioner that notice of the specific charge is a matter of procedural due process, it nevertheless can not be concluded that petitioner's right has been here violated. This is not a case of charging a man with one crime and convicting him of another. De Jonge v. Oregon, supra; or of convicting him of one charge and affirming the conviction with reference to still another provision, Cole v. Arkansas, supra. Nor is it a case like Russell v. United States, supra (a federal prosecution), where the vagueness of the indictment permitted the prosecution to change its theory in the middle of the trial.

The Colorado statute defining murder (C.R.S.1953, 40–2–3), contains all of the definitions, and declares:

"All murder which * * * is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem or burglary; or perpetrated from a deliberate and premeditated design, unlawfully and maliciously, to effect the death of any human being * * * shall be deemed murder of the first degree, * * *."

Thus, in felony-murder, malice is imputed, whereas in ordinary murder it must be demonstrated. Logically, this is a problem of proof and not of pleading and should not, therefore, give rise to the necessity for specific allegation in the indictment. It follows that petitioner's contention that the information was fatally deficient must be rejected as without merit.

b. *The Substantive Due Process Problem.*

It is important to note that the Colorado Supreme Court dealt with and

expressed a conclusion on the point here raised, viz., that the robbery and homicide were in fact distinct transactions, and concluded that (371 P.2d 786, 788):

"The robbery and the killing which followed were all part of the same transaction. They were so closely connected in point of time, place and continuity of action as to be one continuous transaction. All of the defendant's acts from the time he took the money until he cold bloodedly shot his victim were one continuous integrated attempt to successfully complete his crime and escape detection. His escape with his ill-gotten gains was as important to the execution of the robbery as gaining possession of the property. When the homicide is within the res gestae of the initial crime and is an emanation thereof, it is committed in the perpetration of that crime within the meaning of the statute. State v. Turco, 99 N.J. L. 96, 122 A. 844; People v. Nixon, 33 Cal.2d 688, 203 P.2d 748; State v. Fouquette, 67 Nev. 505, 221 P.2d 404; Jefferson v. State, 128 So.2d 132 (Fla.1961); Early v. People, supra [142 Colo. 462, 352 P.2d 112]."

Even if it were within the province of this court to review the above finding (and certainly this is not a matter of constitutional law; rather it is a question of possible erroneous ruling), no fault can be found with the conclusion reached. It is impossible, in the light of the facts adduced to discover any logical hypothesis whereby the robbery and murder can be separated so as to have justified submission of non-felony murder to the jury.

■ The remaining question is whether the statute defining felony-murder as being of the grade of first degree and so as precluding a verdict of second degree, violates substantive due process. On this point the Colorado Supreme Court said (371 P.2d 788):

"C.R.S. '53, 40–2–3 (Cum.Supp.) provides that 'All murder * * * which is committed in the perpetration * * * [of] robbery * * * shall be deemed murder of the first degree * * *.'

"We have repeatedly pointed out that where the uncontradicted evidence was that the murder was perpetrated in the commission of one of the felonies specified in C.R.S. '53, 40–2–3 (Cum.Supp.) there is only one degree of murder, namely, murder in the first degree, and the question of second degree murder is not in the case. Jones v. People, 146 Colo. 40, 360 P.2d 686; Early v. People, 142 Colo. 462, 352 P.2d 112; Jones v. People, 93 Colo. 282, 26 P. 2d 103."

In Early v. People, 142 Colo. 462, 352 P.2d 112, the Court upheld the statute in question, concluding:

"It was competent for the General Assembly to adopt this definition * * *."

Subsequently, the Early case was before the Court of Appeals. See Early v. Tinsley (10 Cir.), 286 F.2d 1. The present question was not discussed in the opinion. The Court of Appeals did note (with reference to the Colorado insanity statute):

"We, of course, accept the Colorado Supreme Court's construction of its statutes * * *."

In the light of the long-standing rule of decision in Colorado that felony-murder is of the grade of first degree, and in view of the considerations previously noted including the Court's conclusion that the information was adequate to apprise the defendant of the charge and to permit the trial court to pronounce judgment, it would be inappropriate to now hold that this construction constitutes a deprivation of due process. There is even less basis for condemning the statute which itself precludes submission of a verdict of second degree murder. No authority has been cited, nor has independent research developed any case holding such a statute unconstitutional.

Having concluded that the petition is without merit, it is

ORDERED that the Order to Show Cause be, and the same is hereby discharged.